IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DIANE PENTECOST
o/b/o C. D. A.                                                                                    PLAINTIFF

V.                                            Civil No. 11-3088

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                               DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Diane Pentecost, brings this action on behalf of her minor child, C. D. A., seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration (Commissioner), denying her application for child's supplemental security income (SSI), benefits under Title XVI of the Social Security Act.

**I.     Background:**

Plaintiff protectively filed an application for SSI on C. D. A.'s behalf on July 18, 2008, alleging that C. D. A. is disabled due to attention deficit hyperactivity disorder ("ADHD"), separation anxiety disorder, and history of a feeding disorder in infancy . Tr. 206-213. Her claims were denied both initially and upon reconsideration. Tr. 76-87.  An administrative hearing was held on April 22, 2010. Tr. 27-69. Plaintiff was present and represented by council.

The Administrative Law Judge ("ALJ"), in a written decision dated November 9, 2010, found that C. D. A.'s impairments were severe, but did not meet, medically equal, or functionally equal any listed impairment. Tr. 13-17.  Further, he concluded that C. D. A. had no limitations with regard to moving about and manipulating objects, caring for herself, and health and physical well-being. Tr. 17-22.  He also noted less than marked limitations in the area of acquiring and using information and  interacting and relating with others with marked limitations in the area of attending to and completing tasks.

On August 12, 2011, the Appeals Council declined to review this decision. Tr. 1-3. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 8, 9.

## II.     Standard of Review:

The court's review is limited to whether the decision of the Commissioner to deny benefits to the Plaintiff is supported by substantial evidence on the record as a whole. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996). Substantial evidence means more than a mere scintilla of evidence, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Pearles*, 402 U.S. 389, 401 (1971). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).

In determining the Plaintiff's claim, the ALJ followed the sequential evaluation process, set forth in 20 C.F.R. § 416.924. Under this most recent standard, a child must prove that she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(c)(i); 20 C.F.R. § 416.906.

When passing the law, as it relates to children seeking SSI disability benefits, Congress decided that the sequential analysis should be limited to the first three steps. This is made clear in the House conference report on the law, prior to enactment. Concerning childhood SSI disability benefits, the report states:

The conferees intend that only needy children with severe disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition. The conferees are also aware that SSA uses the term "severe" to often mean "other than minor" in an initial screening procedure

for disability determination and in other places. The conferees, however, use the term "severe " in its common sense meaning. 142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104- 725 (July 30, 1996).

Consequently, under this evaluation process, the analysis ends at step three with the determination of whether the child's impairments meet or equal any of the listed impairments. More specifically, a determination that a child is disabled requires the following three-step analysis. *See* 20 C.F.R. § 416.924(a). First, the ALJ must consider whether the child is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). If the child is so engaged, he or she will not be awarded SSI benefits. *See id.* Second, the ALJ must consider whether the child has a severe impairment. *See* 20 C.F.R. § 416.924(c). A severe impairment is an impairment that is more than a slight abnormality. *See id.* Third, if the impairment is severe, the ALJ must consider whether the impairment meets or is medically or functionally equal to a disability listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R. § 416.924(c). Only if the impairment is severe and meets or is medically or functionally equal to a disability in the Listings, will it constitute a disability within the meaning of the Act. *See* 20 C.F.R. § 416.924(d). Under the third step, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a). To determine whether an impairment is functionally equal to a disability included in the Listings, the ALJ must assess the child's developmental capacity in six specified domains. *See* 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1); *see also Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 722 n. 4 (8th Cir. 2005).

If the child claiming SSI benefits has marked limitations in two categories or an extreme limitation in one category, the child's impairment is functionally equal to an impairment in the Listings. *See* 20 C.F.R.

3

§ 416.926a(d). A marked limitation is defined as an impairment that is "more than moderate" and "less than extreme." A marked limitation is one which seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2). An extreme limitation is defined as "more than marked", and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. Day-to-day functioning may be very seriously limited when an impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *See* 20 C.F.R. § 416.926a(e)(3).

**III.    Discussion:**

Of particular concern to the undersigned is the ALJ's determination that C. D. A. had less than marked limitations in the area of acquiring and using information and no limitations in the area of self care. The evidence makes clear that C. D. A. has been diagnosed with ADHD, anxiety disorder not otherwise specified, and an eating disorder. In September 2008, Ms. Toni Hamby, Plaintiff's fifth grade teacher, indicated that Plaintiff's reading and language skills were at a fourth grade level, while her math skills were at a second grade level. Tr. 153-161. She also stated that C. D. A. had a very serious problem understanding school and content vocabulary, and reading and/or comprehending written material, and a serious problem expressing ideas in written form. C. D. A. also exhibited obvious difficulties comprehending and following oral instructions, providing organized oral explanations and adequate descriptions; learning new material; recalling and applying previously learned material, focusing long enough to finish assigned activities or tasks, refocusing to task when necessary, carrying out multi-step instructions, waiting to take turns, changing from one activity to another without being disruptive, completing class/homework assignments without distracting self or others, and working at a reasonable pace /finishing on time. Tr. 162-168. Ms. Louis Williams, C. D. A's social studies teacher also reported difficulties with her ability to comprehend and do math problems, provide organized oral explanations and adequate descriptions, and express ideas in written form. Tr. 178-186. She indicated that C. D. A. participated in both math and language tutorials.

C. D. A.'s end of the year report card for the fifth grade reveals primarily C semester averages. Tr. 250. However, some D's and F's were recorded as final nine week grades over the course of the year. Tr. 249. Further, on her benchmark exam, C. D. A. scored in the 40th percentile in science, 33rd percentile in reading comprehension, 30th percentile in comprehensive language, and 14th percentile in math. Tr. 251-254. In fact, her math scores were noted to be "below basic level." Tr. 254. And, while C. D. A. admitted that the Focalin prescribed to treat her ADHD had helped some, the evidence, when viewed in its entirety, indicates that she continues to struggle with her grades and school work.

There is also a question as to C. D. A.'s level of intellectual functioning. Joyce Parker, Plaintiff's counselor at DaySpring Behavioral Services, and Dr. Vann Smith, a consultative neuropsychologist, both agreed that IQ testing was necessary, as it appeared C. D. A. functioned within the borderline to low average range of intellectual functioning. Tr. 324-333, 359-361. However, I.Q. testing was never performed.

After reviewing the evidence in this case, we believe that remand is necessary to allow the ALJ to reevaluate his conclusion that C. D. A. had less than marked limitations in the area of acquiring and using information. It appears to the undersigned that C. D. A. was experiencing some limitations in this area, and that I. Q. testing is necessary to determine the full extent of her limitations. Accordingly, on remand, the ALJ is directed to send C. D. A. for I. Q. testing. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (ALJ owes a duty to a claimant to develop the record fully and fairly to ensure her decision is an informed decision based on sufficient facts); *Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001) (In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision.).

Records also evidence some issues regarding C. D. A.'s ability to care for herself. C. D. A. exhibited terrible hygiene as she did not like to shower or bathe. She also experienced repeated outbreaks of head lice. Tr. 217, 223, 228, 231, 243. And, C. D. A. has suffered from an eating disorder since infancy. When she was very young, she was diagnosed with failure to thrive because she suddenly began losing weight. She and at

5

least two of her siblings were removed from her mother's care and placed in foster care for a year and a half due to allegations of malnutrition and neglect. C. D. A. did gain weight while in foster care, however, she has continued to exhibit eating difficulties. Plaintiff testified that C. D. A. does not eat much and that she has to subsidize her meals with PediaSure to ensure she is getting the nutrients she needs each day. In December 2009, C. D. A. was within her normal range or weight, but she reported to Ms. Parker that she felt she was overweight. Tr. 349-351. For these reasons, Ms. Parker submitted a child's medical/functional assessment acknowledging marked limitations in the area of caring for herself. After a thorough review of the record, the undersigned agrees that there are some limitations in this area of functioning that require further consideration. Accordingly, we do no find significant evidence to support the ALJ's conclusion there is no limitation in this area of functioning.

### III. Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and the denial of benefits to C. D. A. should be reversed and this matter remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 6th day of December 2012.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)